IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MISTY BONILLA, | Case No. 05-cv-0013 LJO TAG |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION |
| vs. | |
| MICHAEL J. ASTRUE,[1] Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Misty Bonilla ("Plaintiff") seeks judicial review of an administrative decision denying her claims for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401 et seq., and for supplemental security income under Title XVI of the Act, 42 U.S.C. § 1381 et seq. (Doc. 1). Pending before the Court is Plaintiff's appeal from the administrative decision of the Commissioner. Plaintiff filed her complaint on January 4, 2005 (Doc. 1), and her opening brief on October 8, 2005.[2] (Doc. 17). The Commissioner filed his opposition on November 22, 2005. (Doc. 20). Plaintiff did not file a reply brief.

**JURISDICTION**

On May 22, 2002, Plaintiff protectively filed[3] a concurrent leads/protective worksheet for

---

[1] Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social Security Administration. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

[2] Plaintiff filed two identical opening briefs. (Docs. 16, 17). Because the second brief includes exhibits, it will be considered Plaintiff's opening brief. (Doc. 17).

[3] To qualify as an effective supplemental security income claim, an application for benefits must be submitted on a prescribed form. 20 C.F.R. § 416.305. However, a written statement indicating a person's intent to claim benefits can, if certain coincident and subsequent requirements are met, establish a protective filing date. 20 C.F.R. § 416.340.

disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Act. (Administrative Record ("AR") 104, 283). Plaintiff subsequently filed applications for DIB and SSI (collectively, "the applications") on June 7, 2002. (AR 105-07, 284-85). In her Disability Report, Plaintiff stated that she was limited with respect to her ability to work because she had a learning disability and suffered from psoriasis, lower back pain, and migraine headaches. (AR 113).

Plaintiff's applications were denied initially (AR 89-92, 287-89, 296) and on reconsideration (AR 94-98, 291-95, 297). On April 30, 2004, a hearing was held before Administrative Law Judge ("ALJ") Michael Haubner. (AR 52-79). ALJ Haubner found that Plaintiff was not disabled in a written decision dated May 28, 2004. (AR 16-23). The Appeals Council denied Plaintiff's request for review on November 4, 2004. (AR 6-9). The ALJ's decision, therefore, became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). The initiation of an appeal in the district court must be commenced within sixty (60) days of the Appeal Council's decision. Id. On January 4, 2005, Plaintiff timely filed this action. (Doc. 1).

**STATEMENT OF FACTS**

The facts relevant to this opinion have been presented in the administrative hearing transcript, the ALJ's decision, and the Plaintiff's and the Commissioner's briefs, and only will be summarized here. To the extent necessary, additional facts will be addressed in this Court's analysis.

Plaintiff was born on June 1, 1979, making her 24 years old at the time of ALJ Haubner's decision. (AR 59, 105, 16-23). At the hearing, Plaintiff testified that she had graduated from high school, although the majority of her curriculum was comprised of special education classes. (AR 59-60). She reported that she could not count, could read "a very little," and could write "some." (AR 61, 64).

Regarding her work history, Plaintiff testified that she worked as an in-home health service provider from 1998 through 2001. (AR 60-62). At the time of the hearing, her sole source of income was from Aid to Families with Dependant Children ("AFDC"). (AR 75).

As to her daily life activities, Plaintiff testified that she and her five-year-old daughter lived by themselves in an apartment. (AR 64-65). She added that her daughter attended pre-school for half of the day. (AR 66). Plaintiff further testified that she took care of her own personal needs and helped dress and bathe her daughter. (AR 65-66). She cooked the meals every day, washed dishes, made the

1  bed, and vacuumed every other day, and swept and mopped the floor every three-to-five days. (AR
2  67-68). Plaintiff added that she did the laundry and shopped for groceries on a monthly basis. (AR
3  66-67). In addition, she had an unrestricted driver's license and drove twice a day. (AR 65).
4         With respect to her inability to work, Plaintiff testified that her learning disability and psoriasis
5  rendered her disabled. (AR 68). According to Plaintiff, she had scars all over her body from the
6  psoriasis. (AR 69). She added that the psoriasis caused her problems on more days than not, further
7  elaborating that she suffered very bad outbreaks two times each month. (AR 69, 76). Plaintiff explained
8  that the psoriasis usually appeared on her hands, arms, and stomach, and she presently had an outbreak
9  on her arms and stomach that was "not that bad." (AR 69). Plaintiff testified that, when her psoriasis
10 was bad, she would develop a "pusy" rash that drained and cracked. (AR 70). She applied prescribed
11 cream medicines and wrapped herself in Saran Wrap, which helped drain the rash. (AR 70-71). Plaintiff
12 testified that, when she suffered a bad outbreak, she could not do many of her usual activities because
13 she had to avoid contact with substances, such as water, various chemicals, household products, chicken,
14 and tomatoes, that worsened the rash. (AR 71-73). She further stated that the more she used her hands,
15 the more they would crack and bleed. (AR 73). Plaintiff testified that, other than putting on special
16 gloves and topical medications, she just dealt with the itchiness and redness associated with an outbreak.
17 (AR 73). Plaintiff acknowledged that her psoriasis had "gotten a little better" through her use of the
18 prescribed cream ointments. (AR 71).
19        As to her learning disability, Plaintiff testified that she attended a six-week course at West Hills
20 College in 2001, which consisted of child development classes. Plaintiff stated that, although she had
21 no problems attending or completing the work, she failed the course. (AR 74-75). She stated that she
22 could prepare a grocery list, but would not always be able to read it. (AR 75-76).
23        In response to her attorney's question, Plaintiff acknowledged that she takes medication for
24 asthma. (AR 76). Plaintiff testified that air quality and allergens increase the severity of her asthma.
25 (AR 76). She added that she uses an inhaler three times per day, but denied being hospitalized overnight
26 or possessing a nebulizer or oxygen tanks because of breathing problems. (AR 76-77).
27        After Plaintiff finished testifying, her attorney, with the permission of the ALJ, made a closing
28 statement. (AR 77). The attorney requested the ALJ to consider, at step three, whether Plaintiff

qualified as disabled under Listing 12.05 based on her low mental acumen, as evidenced by the averaged result of three IQ tests she had taken when combined with Plaintiff's psoriasis. (AR 77-78).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. See, 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. See Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005)(quotations and citations omitted); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); 42 U.S.C. § 405(g). Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (citing Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court must uphold the decision of the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. Brawner v. Sec'y of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987).

///

///

**RELEVANT LEGAL FRAMEWORK**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that she is not only unable to do her previous work but cannot, considering his age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

**Sequential Evaluation Process**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the claimant is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If a claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which necessitates that the claimant's impairment be compared with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from doing work performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). See Bowen v. Yuckert, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971). In terms of the five step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that an ALJ's "*affirmative duty* to assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999)(italics in original). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984). At step three, however, the claimant bears the burden to demonstrate that her impairment(s) meet or equal one of the listings, rendering her presumptively disabled. Benten ex rel. Benton v. Barnhart, 331 F.3d 1030, 1034 (9th Cir. 2003). The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. Kail, 722 F.2d at 1498.

## ADMINISTRATIVE FINDINGS[4]

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 1, 2001. (AR 19, 22). At step two, the ALJ determined that Plaintiff suffered from "borderline intellectual functioning and academic delay," an impairment or combination of impairments that, pursuant to 20 C.F.R. §§ 404.1520(b) and 416.920(b), were considered severe. (AR 20, 22). The ALJ discussed in detail the medical records as they related to Plaintiff's asthma, psoriasis, and migraine headaches, and found that these physical ailments did not constitute severe impairments. (AR 20). At step three, the ALJ found that Plaintiff did "not have any impairment or combination of impairments meeting or equaling the criteria under any section of Appendix 1, Subpart P, Regulations No. 4." (AR 20, 23). At step four, the ALJ determined that Plaintiff had no past relevant work as defined under 20 C.F.R. §§ 404.1565 and 416.965. (AR 23). At step five, the ALJ first noted that Plaintiff's allegations regarding the limitations of her impairments were not credible when assessed

---

[4] The ALJ determined that Plaintiff had worked the requisite period of time to gain insured status for eligibility for benefits under Title II (disability benefits) through September 2003 only. Accordingly, he found that Plaintiff must establish that she was disabled on or before September 30, 2003. (AR 19, 22).

in accordance with Social Security Ruling ("SSR") 96-7p. (AR 21, 23). The ALJ then found that Plaintiff had no exertional restrictions and had "the residual functional capacity to perform non-complex tasks, and she can adapt and relate." (AR 23). After noting Plaintiff's young age and attainment of a high school diploma, the ALJ utilized Social Security Ruling ("SSR") 85-15 and Section 204.00 of the Medical-Vocation Guidelines to conclude that Plaintiff was not disabled and, accordingly, not eligible for benefits under 20 CFR §§ 404.1520(f) and 416.920(f). (AR 23).

## ISSUES

In her opening brief, Plaintiff initially requests that this Court remand the action based on new evidence. She then asserts that the Commissioner erred as a matter of law, alleging that:

    A.    The ALJ improperly evaluated whether Plaintiff satisfied Listing 12.05(C) at step three;

    B.    The ALJ should have developed the record further with respect to Plaintiff's mental health; and

    C.    The ALJ erred in finding Plaintiff's pain testimony not credible

This Court must uphold the Commissioner's determination that a claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

## DISCUSSION

**New Evidence**

As an initial matter, Plaintiff includes new evidence in her opening brief that she contends warrants a remand for further administrative proceedings. (Doc. 17, p.5 and attach.). The new evidence consists of a report prepared by Dr. Maximo Parayno, Jr., derived from his May 2005 psychiatric evaluation of Plaintiff. According to Dr. Parayno, Plaintiff has both mild mental retardation and a learning disability that preclude her from performing a job and satisfies Listing 12.05D. (Doc. 17, attach.).

Title 42, section 405(g) of the United States Code provides for remand when there is new evidence that is material and good cause exists for the plaintiff's failure to incorporate the evidence in a prior proceeding. Burton v. Heckler, 724 F.2d 1415, 1417 (9th Cir. 1984). To meet the materiality requirement, the new evidence must bear directly and substantially on the matter in dispute. Mayes v.

7

1   Massanari, 276 F.3d 453, 462 (9th Cir. 2001)(quotations and citations omitted). In addition, the plaintiff
2   must show that there is a "reasonable possibility that the new evidence would have changed the outcome
3   of the administrative hearing." Id. The good cause requirement is satisfied if new information does not
4   surface until after the Commissioner's final decision, and the plaintiff could not have obtained that
5   evidence at the time of the administrative proceedings. Booz v. Sec'y of Health and Human Serv., 734
6   F.2d 1378, 1380 (9th Cir. 1984).

7   In the instant case, Plaintiff did not obtain or introduce Dr. Parayno's evaluation at any phase of
8   the administrative proceedings, including when she sought review before by the Appeals Council, which
9   was denied on November 4, 2004. (See generally AR). Plaintiff, however, offers no reason why she had
10  not solicited this information from Dr. Parayno earlier, other than her argument, discussed below, that
11  the ALJ failed to further develop the record. (Doc. 17, p. 5). The logical explanation is that, when
12  Plaintiff failed to succeed on her disability claim at the agency level, she sought out a new expert witness
13  who might better support her position. This theory is strengthened by Plaintiff's emphasis on Dr.
14  Parayno's ability to render a favorable report without requiring Plaintiff to undergo any testing, (Id. at
15  6). The "good cause" requirement would "be meaningless if such circumstances were sufficient to allow
16  introduction of new evidence." Allen v. Sec'y of Health and Human Serv., 726 F.2d 1470, 1473 (9th
17  Cir. 1984).

18  Even if Plaintiff were able to show that good cause existed for submitting the psychological
19  evaluations after the final decision of the Commissioner, the evidence is not sufficiently material to
20  compel a remand to the ALJ. Only if the plaintiff's new evidence is material, and relates to the period
21  on or before the date of the ALJ's decision, should the Court consider the ALJ's decision in light of the
22  new evidence. New evidence is material if there is a reasonable possibility that it would have changed
23  the outcome of the ALJ's determination. Booz, 734 F.2d at 1380. To meet the materiality standard, the
24  new evidence must bear directly and substantially on the matter in dispute. Ward v. Schweiker, 686 F.2d
25  762, 764 (9th Cir. 1982).

26  In order to establish disability, Plaintiff must prove that she was disabled, for purposes of Title
27  II benefits, by September 30, 2003, the date she was last insured, and, for Title XVI benefits, by May
28  28, 2004, the date of the ALJ's decision. The psychiatric evaluation at issue was based on Plaintiff's

May 14, 2005, consultation with Dr. Parayno. (Doc. 17, attach.). In the resulting reports, Dr. Parayno states that his assessment of Plaintiff "is from: current," and his evaluation is based on Plaintiff's answers to questions he posed in May 2005. (Doc. 17, attach.). Thus, there is no clear showing that Plaintiff's mental condition, as reported by Dr. Parayno, was the same in May 2005 as it had been when the ALJ issued his decision. To be material, evidence must be related to the time period at issue. Cotton v Bowen, 799 F.2d 1403, 1409 (9th Cir. 1986), overruled in part on other grounds by Bunnell v. Sullivan, 912 F.2d 1149 (9th Cir. 1990). The undersigned finds that Plaintiff has not established good cause for failing to submit the new evidence during the administrative proceedings, and further finds that Plaintiff is incapable of establishing that the new psychiatric evaluation concerns the period of time at issue in this case.

Since Plaintiff fails to meet the materiality and "good cause" requirements, the undersigned declines to consider the newly presented evidence provided in her opening brief. Plaintiff is, however, free to file a new application for benefits based on any period of disability that may have commenced after the ALJ's decision was issued. New evidence that indicates a recent deterioration of a condition may support a new application for benefits, but it does not meet the standard for a new evidence remand. Ward, 686 F.2d at 764-765.

**A.  The ALJ Improperly Evaluated Whether Plaintiff Met Listing 12.05C at Step Three**

Plaintiff contends that, had the ALJ properly evaluated her mental and physical ailments, he would have concluded that she was disabled at step three of the sequential evaluation process because her impairments satisfied Listing 12.05C. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05C ("Listing 12.05C" or "the Listing"). Plaintiff asserts that reports and test results indicated that she suffered mild to moderate mental retardation which, in conjunction with her IQ test results, her psoriasis and depression, and the ALJ's finding that her academic delay constituted a severe impairment, sufficed to meet or equal Listing 12.05C. She adds that the ALJ minimized and ignored the frequency and/or existence of her psoriasis, asthma, and obesity. According to Plaintiff, had the ALJ properly evaluated her physical ailments and considered them in conjunction with her mental impairments, he would have found that she satisfied Listing 12.05C and, therefore, was disabled. Finally, Plaintiff argues that, because the issue of whether she met or equaled Listing 12.05 was raised at the administrative hearing,

the ALJ was required to provide his reasons for finding that she did not meet the Listing.[5] (Doc. 17, pp. 4-6).

In general, it is the Plaintiff's duty to prove that she is disabled. See 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require"). The Code of Federal Regulations explains:

> you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairments(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis. We will consider only impairment(s) you say you have or about which we receive evidence.

20 C.F.R. §§ 404.1512(a) & (c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled").

Moreover, with respect to establishing disability at step three, the plaintiff bears the burden of proving that her ailments meet or equal one of the Listings. Benten ex rel. Benton v. Barnhart, 331 F.3d 1030,1034 (9th Cir. 2003). To fall within the overall listing for mental retardation – Listing 12.05 – a claimant must demonstrate that, during her developmental period, she manifested "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05; Chunn v. Barnhart, 397 F.3d 667, 671 (8th Cir. 2005). Before a plaintiff will satisfy Listing 12.05C, he or she must possess (1) a "valid verbal, performance, or full scale IQ of 60 through 70," and (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." Listing 12.05C; Chunn, 397 F.3d at 671.

In addition, contrary to Plaintiff's assertion, an ALJ is not required to explain with specificity the reasons underlying his finding that a claimant does not meet a specific listing. The Act provides that:

> The Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the

---

[5] Plaintiff provides no legal support for any of these arguments. (See Doc. 17).

evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.

42 U.S.C. § 405(b)(1). Courts that have directly addressed the extent to which an ALJ must discuss his rationale for finding that a plaintiff did not meet or equal a listing have concluded that it is sufficient if the ALJ discussed the evidence upon which he relied to find the plaintiff was not disabled or to enable judicial review on appeal. See Jones v. Barnhart, 364 F.3d 501, 504-505 (3rd Cir. 2004)(the ALJ's decision must contain sufficient reasons and findings to enable meaningful judicial review); Bryant on Behalf of Bryant v. Apfel, 141 F.3d 1249, 1252-1253 (8th Cir. 1998)(if the ALJ discusses the evidence upon which he relied, the fact that his decision is poorly written and disorganized does not necessitate a remand); Miller v. Comm'r of Social Security, 181 F.Supp.2d 816, 819 -820 (S.D. Ohio 2001)(ALJ's conclusory statement, without any discussion of the evidence, prevented meaningful judicial review); Lewis v. Bowen, No. 85 C 2591, 1986 WL 12810, *1 (N.D. Ill. Nov. 13, 1986)(the ALJ's hint as to why he found claimant did not equal a listing was sufficient if supported by the record as a whole).

In the instant case, the ALJ did not commit legal error by not specifically stating why Plaintiff did not satisfy Listing 12.05C because he addressed the reasons underlying his finding that she was, instead, academic delayed and of borderline intellect. (AR 20); see 42 U.S.C. § 405(b)(1) and cases cited above. The ALJ relied on a 1995 psychological education assessment, which generally stated that Plaintiff fell in the "developmentally delayed-borderline (slow learner) range." (AR 141). The 1995 evaluation added that Plaintiff's strong areas included the ability to follow instructions and clerical speed and accuracy, and her socialization and daily living skills – both of which are considered adaptive – were in the adequate to high range. (Id.). In addition, the 1995 evaluation report that Plaintiff had a full scale IQ of 72 in 1992 and an IQ index of 64, which equaled a range of 61-70, in 1995. (AR 140). The ALJ next considered an August 2002 psychological examination performed by consulting psychologist Richard Engeln, Ph.D. (AR 231-239). Dr. Engeln reported that Plaintiff was well-kempt, alert, and oriented. (AR 232). Tests performed indicated that Plaintiff's intelligence was mid-borderline, with a full-scale WAIS IQ of 72, with other types of tests resulting in lower, underestimated scores because Plaintiff withdrew when confronted with tasks that required deeper concentration or were more complex. (AR 233). Overall, Dr. Engeln reported that Plaintiff had borderline intelligence, no evidence of mental

or emotional illness, and able to live alone and care for her daughter. (AR 233-234). His diagnosis at Axis II was academically delayed but capable to work in an entry-level job in which simple one-to-two step instructions are given. Dr. Engeln found no psychological restrictions precluding Plaintiff from working within the parameters set forth in his report. (AR 234). Based primarily on the school report and Dr. Engeln's evaluation, the ALJ found that Plaintiff suffered academic delay and borderline intellectual function, which is not equivalent to mental retardation as defined in Listing 12.05. It is not clear how Plaintiff concluded that these records prove mental retardation, rather than academic delay, given that they actually use the term "academic delay," and state that Plaintiff has the adaptive skills precluding a finding of mental retardation. (Doc. 17, p. 4); Listing 12.05. Nonetheless, because the ALJ explained why he found Plaintiff suffered academic delay and borderline intellectual functioning, rather than the more severe mental retardation, he has fulfilled the requirement that he state why Plaintiff did not meet or equal the Listing sufficiently to enable judicial review.

Moreover, the ALJ discussed his reasons for finding that Plaintiff's psoriasis, asthma, and migraine headaches were not severe.[6] (AR 20). The ALJ noted that Plaintiff's treating physicians – Drs. Sydney Supit and Julia Funieru, and the consultative internist, Dr. Sherry Lopez, did not report that Plaintiff was incapable of working due to these physical ailments. (Id.). The record reveals that Plaintiff had a history of skin rashes dating back until as early as 1990, but it was not properly diagnosed as psoriasis until 2001. (AR 272-278, 223-227). She last saw Dr. Funieru for psoriasis on March 19, 2002, when the doctor reported that Plaintiff's psoriasis had improved with the use of topical medications and she could return to work with "adequate protection." (AR 222). Plaintiff was treated by Pavillion Medical Group ("PMG")[7] for a psoriasis outbreaks in June and October 2002, and in October 2003. (AR 230, 270, 271). PMG physicians consistently refilled Plaintiff's topical medications, and there is no indication that she was advised to do anything other than apply the lotions when she was seen for her two flare-ups. (AR 230, 252, 269, 270, 271). In January 2004, Dr. Supit completed a medical report at the request of the Commissioner. Dr. Supit diagnosed Plaintiff as suffering from chronic psoriasis

---

[6] The ALJ also stated that Plaintiff reported having two migraine headaches per year. (AR 20; see AR 246).

[7] It appears that Dr. Supit was affiliated with PMG and treated Plaintiff in that capacity.

1  with frequent flare-ups, depression, and mild asthma that responded well to the Albuterol inhaler.
2  Overall, his prognosis was "fair to good," and he identified no physical reasons that precluded her from
3  working. (AR 279-82). Dr. Supit did not mention Plaintiff's obesity, and it was referenced only once
4  in her medical records. (AR 269).

5  In addition to the above, the ALJ stated that he relied upon the consultative evaluation by Dr.
6  Sherry Lopez, an internist, who, after examining Plaintiff, reported that her most significant finding was
7  some psoriatic lesions on Plaintiff's hands, and minor lesions elsewhere. (AR 248). Plaintiff told Dr.
8  Lopez that she got headaches very rarely, about twice a year (AR 246). Dr. Lopez diagnosed Plaintiff
9  as suffering from psoriasis, a learning disability, and rare migraine headaches. (AR 249). According
10 to Dr. Lopez, given that Plaintiff's treatment for psoriasis has been limited to topical ointments, rather
11 than systemic treatments, she found that Plaintiff had no restrictions on her work. (Id.).

12 Based on the foregoing medical reports, which the ALJ summarized in his decision, there is no
13 merit to Plaintiff's contention that the ALJ minimized or ignored her physical impairments. As the
14 record reveals, Plaintiff suffered from psoriasis and mild asthma, both of which were treated non-
15 aggressively. Plaintiff suffered one to two migraine headaches per year, for which she received no
16 medical treatment. The one reference to her obesity does not warrant discussion by the ALJ, given that
17 it was not addressed by her treating physican. Finally, no doctors mentioned that Plaintiff had any
18 physical restrictions on her ability to work. Accordingly, the undersigned finds that none of the
19 arguments raised by Plaintiff in this section have merit.

20 **B.    Failure to Further Develop the Record**

21 Plaintiff contends that, although the record repeatedly noted that she suffered from depression,
22 and her IQ test scores were close to the Listing's required 60-70 range, the ALJ failed in his duty to
23 develop the record further so that he could determine whether (a) Plaintiff's depression adversely
24 impacted her ability to work, and (b) her IQ scores were equivalent to Listing 12.05. (Doc. 17, pp. 4-5).
25 In a Social Security case, an ALJ is obligated to fully and fairly develop the record even if the
26 claimant is represented by counsel. Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003). This duty
27 may require that the ALJ obtain additional information by, inter alia, contacting treating physicians,
28 scheduling consultative examinations, or calling a medical expert. 20 C.F.R. §§ 416.912(e)-(f),

416.919a; Armstrong v. Commissioner, 160 F.3d 587, 590 (9th Cir. 1998). The ALJ is not obligated to develop the record further, however, unless the evidence is ambiguous or "the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-460 (9th Cir. 2001).

In the instant case, the ALJ was not obligated to further develop the record with respect to Plaintiff's depression or mental retardation given that there were sufficient, unambiguous records to enable him to evaluate the evidence and render a proper decision. (See Section A, above). With respect to Plaintiff's depression, the record indicate that she was prescribed an anti-depressant by her treating internist, Dr. Supit, in September 2002, which he refilled, but Plaintiff did not take the medication as directed. In January 2004, Dr. Supit again prescribed the anti-depressant. (AR 252, 257, 259, 269, 279). There is no indication that therapy was recommended or that Plaintiff's depression interfered with her adult daily activities or ability to work. (See generally AR). In light of the scant mention of Plaintiff's depression and the lack of any indication that her depression contributed to her disability, the ALJ did not err in failing to develop the record further as to her psychiatric problems. Mayes, 276 F.3d at 459-460. In addition, the administrative record was replete with Plaintiff's school records, various tests, psychological evaluations, and medical records, based upon which the ALJ could determine whether Plaintiff's intellectual abilities met or equaled Listing 12.05C. Mayes, 276 F.3d at 459-460; (see generally AR). Accordingly, the ALJ did not err in failing to develop the record further.

**C.   Plaintiff's Testimony and Third Party Questionnaire**

Plaintiff asserts that the ALJ committed legal error when he found that her testimony concerning the pain she suffered was not credible without providing specific and adequate reasons for discounting the testimony, as required under SSR 96-7p and Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991)(en banc). Plaintiff further contends that the ALJ erred in making this finding without considering a third-party's questionnaire responses. (Doc. 17, pp. 6-7).

**Plaintiff's Testimony**

Plaintiff contends that the ALJ erred when he found that her testimony concerning the pain she suffered was not credible without providing specific and adequate reasons for discounting the testimony.

///

A two step analysis applies at the administrative level when considering a claimant's subjective credibility. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment and show that the impairment could reasonably be expected to produce some degree of symptom. Id. at 1281-1282. If claimant satisfies this test – and if there is no evidence of malingering – the ALJ can reject the claimant's testimony about the severity of his or her symptoms "only by offering specific, clear and convincing reasons for doing so." Id. at 1281. Such specificity is crucial so as to enable effective judicial review. See Mersman v. Halter, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001)("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight"). Thus, an ALJ's decision "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester v. Chater, 81 F.3d 821, 835 (9th Cir. 1995). Grounds for an adverse credibility finding include, but are not limited to, inconsistencies either in the claimant's testimony or between the claimant's testimony and conduct, the claimant's daily activities and work record, the location, duration, frequency, and intensity of the claimant's pain or other symptoms, testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains, and the lack of adequate explanation for a claimant's failure to follow a prescribed course of treatment. See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); SSR 96-7p.

Here, ALJ Haubner discussed the medical evidence and Plaintiff's testimony in the context of assessing the severity of Plaintiff's impairments and residual functioning capacity. In the evidence evaluation portion of the ALJ's decision, he concludes by stating: "Weighing all relevant factors, I find that the claimant's impairments are not as limiting as she alleges." (AR 21). In the findings portion of the decision, the ALJ finds that: "5. The claimant's allegations regarding her limitations are not credible when evaluated under Social Security Ruling 96-7p." (AR 23). As discussed above, ALJ Haubner acknowledged that Plaintiff suffers from psoriasis, asthma, and migraine headaches, and further addressed the medical and school reports upon which he relied when he found that these physical

ailments were not so severe as to prevent or limit Plaintiff's ability to work. (AR 20, 71; see Section A).[8] The ALJ also discussed Plaintiff's mental and adaptive abilities, as reported in the record, and noted that she could follow simple instructions. (AR 20-21; Section A).  Within the context of addressing whether Plaintiff retained the residual function capacity to work, ALJ Haubner discussed Plaintiff's physical and mental impairments and noted that he is required to consider "all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR §§ 404.1529 and 416.929, and Social Security Ruling 96-7p."[9] (AR 21).

As to the degree of Plaintiff's physical pain and limitations, the ALJ noted discrepancies between Plaintiff's testimony and her reported lifestyle, e.g., she testified that she suffered severe psoriatic breakouts twice monthly, yet she was able to live independently with her pre-school aged daughter, has a driver's license with no restrictions, drives twice a day, makes her bed, washes dishes, vacuums every other day, cooks every day, does grocery shopping, and engages in other daily or routine activities. (AR 21). In addition, the ALJ also considered the medical records and opinions, which revealed that Plaintiff's pain and incapacity due to her psoriasis were less severe and occurred on a much less frequent basis, and that she reported that she suffered migraine headaches very rarely, about twice a year. (See, AR 20, 230, 246, 270, 271). The ALJ noted his consideration of the medical opinions regarding the severity of Plaintiff's impairments and the resulting limitations, including physicians' conclusions that Plaintiff could perform simple repetitive tasks and adapt and relate, and that she had no severe physical impairments. (AR 20-21; Section A). In addition, the ALJ also considered Dr. Engeln's opinion that Plaintiff was capable of working with normal supervision and was able to receive one-to-two-step instructions. (AR 21).

---

[8] Because the various records are discussed in detail, or cited fully to enable the parties easily to locate them, the substance of the reports will not be addressed in this section.

[9] SSR 96-7p directs the ALJ to consider not only objective medical evidence, but also the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of her pain or other symptoms; (3) factors that precipitate or aggravate the symptoms; (4) the effectiveness and adverse side effects of prescribed medications; (5) other treatments for the relief pain and symptoms; (6) any other measures used by the individual to relieve the pain and symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions resulting from pain or other symptoms.   SSR 96-7p.

1    ALJ Haubner's decision reflects that he considered medical records and opinions, school records, and Plaintiff's daily activities and frequency of pain, before making his adverse credibility finding. While the ALJ's decision does not summarize the reasons for his adverse credibility finding immediately following the determination, it is sufficiently clear from the record that the ALJ's decision to discount Plaintiff's testimony was based on discrepancies between her testimony and the medical records and opinions, school records, and Plaintiff's daily activities and frequency of pain. All of these are legitimate factors in assessing the credibility of a claimant's testimony. See Light, 119 F.3d at 792; SSR 96-7p. The Court concludes that the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective complaints of pain and limitation to the extent alleged, and that the ALJ's reasons were supported by substantial evidence in the record and were sufficiently specific to allow this Court to conclude that the ALJ rejected Plaintiff's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.

**Third Party Questionnaire**

Plaintiff contends that the ALJ erred when he rejected her subjective complaints as not credible, without considering a daily activities questionnaire completed by Plaintiff's friend, Ericka Vasquez. The questionnaire responses confirm that Plaintiff suffers bad psoriasis outbreaks. (AR 161-168). Ms. Vasquez does not live with Plaintiff and it appears that her responses relate to matters she could only have been told by Plaintiff, e.g., the nature and extent of Plaintiff's sleep at night. (AR 161). As also noted by the Commissioner, Ms. Vasquez also reports that Plaintiff gets along well with others and takes full time care of her daughter, including taking her to and from school. (AR 163-164).

The Commissioner's regulations state that, in addition to medical sources, "we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include . . . spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy." 20 C.F.R. § 404.1513(d)(4). As is evident, the regulation itself does not impose an absolute rule. Rather, as stated in Smolen, 80 F.3d at 1288, lay evidence is considered when, for example, "medical records are sparse and do not provide adequate documentation of [] symptoms." Moreover, it is settled that an ALJ "need not discuss *all* evidence presented to her. Rather, she must explain why 'significant probative evidence has been rejected.'" Vincent v. Heckler, 739 F.2d

17

1393, 1394-1395 (9th Cir. 1984) (emphasis in original)(upholding ALJ's decision even where ALJ failed to discuss testimony of two lay witnesses and one medical witness). See Parks v. Sullivan, 766 F. Supp. 627, 635 (N.D. Ill. 1991)("the ALJ does not need to meet the impossible burden of mentioning *every* piece of evidence")(emphasis in original).

Here, Plaintiff's medical records were not sparse and provided more than adequate documentation of her impairments. These records, referenced and discussed by ALJ Haubner in his written determination, included extensive school records, treatment notes and reports by Plaintiff's treating physicians, and multiple consultative examinations both as to claimant's mental and physical status. (AR 20-21). These medical reports, and others cited by ALJ Haubner, constitute ample, and certainly substantial, evidence in support of the ALJ's determination. In sum, and quoting from the Ninth Circuit in Vincent in disposing of a similar argument, "[t]he ALJ properly discounted [i.e., did not reference in a written determination] lay testimony that conflicted with the available medical evidence." Vincent, 739 F.2d at 1395.

**CONCLUSION AND RECOMMENDATIONS**

For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ properly concluded that Claimant is not disabled. This Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court RECOMMENDS:

1. Plaintiff's social security complaint BE DENIED, and

2. Judgment BE ENTERED for Defendant Michael J. Astrue and against Plaintiff Misty Bonilla.

These Findings and Recommendations are submitted to the United States District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304. No later than fifteen (15) days after service of these Findings and Recommendations, any party may file written objections to these Findings and Recommendations with the Court and serve a copy on all parties and the Magistrate Judge and otherwise in compliance with this Court's Local Rule 72-304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Responses to objections shall be filed and served no later than ten (10) days after service of the objections and otherwise in compliance with this Court's Local Rule 72-304(d). The District Judge will

review the Magistrate Judge's Findings and Recommendations, pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Judge's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 9, 2007**                                                              **/s/ Theresa A. Goldner**
                                                                                              UNITED STATES MAGISTRATE JUDGE